Thank you, Your Honors. Carl Gunn, appearing for Mr. Scharber. Your Honors, there were two plain errors here. One of them, the government's only argument is, oh, there would have been a life sentence anyway. The other one, the government doesn't concede error, but I would submit the language of the guideline is, in fact, plain. I can start with either one of preference, but I'll go in that order if the court doesn't have a preference. The error the government excuses because there would have been a life sentence anyway, in its view, is the 924C firearm enhancement double counting. First of all, their argument that, gee, the wooden pole would have supported a dangerous weapon enhancement anyway, clearly fails under both the guidelines commentary in this court's case law. You can't, when someone has two weapons or when conspirators have two weapons, use one for the 924C and one for the enhancement. That, I think, is clear under the case law. Second, the argument that there would have been a departure anyway doesn't carry the day for, I think, multiple reasons. Well, I think we need to ask the district judge what's he going to do. I mean, that's Right. I think you have to remand, especially when you're talking about a life sentence. I just can't see a court of appeals unless there's something really expressed. I think the government's argument is that, for purposes of the dangerous weapon, fists, pole, feet are the same thing as a gun. There's two reasons that doesn't work, Your Honor. First of all, there'd have to be a factual finding to that effect. But second of all, under the commentary in the case law, when conspirators have two weapons, here are the guns and the wooden pole, you can't use one for the dangerous weapon enhancement and one for the 924C. But in any event, there would have to be a finding that this was a dangerous weapon. Correct. So you've got two layers of problems that I think require remand here. You then have the grouping error, which I think is also plain. If you look at the language of the guideline, I just submit the government can't get around it. First you have section 3D1.2B. It says, when counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan. You have that exactly here. What you have is taking the car to drive the victims to this hatch or pass area. That's the taking that constitutes the carjacking. It's the exportation that constitutes the kidnapping. Frankly, it seems to me it's really just one act. At the very least, it's two acts connected by the... Well, you could kidnap the person in your own car, right? Correct. I understand that isn't what happened, but I suppose that there... I guess my only question is whether you would need a fact finding on this, too, as to whether this was all one event. I don't think you would, Your Honor. First of all, the government talks about how this car wasn't necessary to the crime. But if you read the guideline, there's nothing in the other. It's just that they're, in fact, both committed together for a common objective. Here the common objective was basically punishing the victims and teaching the community a lesson or whatever. So I don't think the necessary is a red herring, because the guideline doesn't require necessary. The other argument the government makes is it grabs onto this substantially the same harm language. And I'm not clear how it's defining that. But the thing is here, the harm as being either subsection A, B, C, or D. If you read the guideline, it says all counts involving substantially the harm shall be grouped together into a single group. Then it says counts involving substantially... Counts involve substantially the same harm within the meaning of this rule when... And then it defines that by the three subsections. So... I should know this, but I don't. Were you the trial counsel or are you just here for opinion? No, I was not, Your Honor. So I think on the... And that's just subsection B. You have subsection C here, which is even more clear. If one of the crimes gets used as a specific offense characteristic in the calculation of the other, they group. Here the abduction got used in the carjacking guideline. Now the government says, oh, gee, that's a mistake. Well, that's still an error that's plain that requires remand. Second of all, I'm not sure it was a mistake. The government says, oh, well, the car was only taken to facilitate the murder. Well, that's... The first thing that Mr. Sharber supposedly talked about, according to his co-defendant, was punishing the victims by stealing from them. So it seems to me a very reasonable view here that he punished the victims by both attempting to murder them and stealing their car. But in any event, that question would be open on remand as well. I think so, Your Honor. I think so. Why don't we hear from the government? All right. I was going to address the rule, but I can... I'll let you hear from the government. And again, my name is Will Taylor. I represent the United States and I actually was the prosecutor at the trial court. Well, you let two things go by you that you shouldn't have. Well, so let me... Let's start with... This is a plain error review. It's sort of being argued as if... Two things that you let go by you that you shouldn't have. Well... What I wondered about was that the pre-sentence report didn't deal with either of these. Is that right? Correct. The pre-sentence report did not deal with either of these. Well, that makes me wonder about the probation people here. It's a little strange that they missed these both. So the question is, if the trial judge, with only the pre-sentence report and two sentencing memorandums, was essentially required to find what Mr. Gunn, you know, ably briefed over 25 plus pages... He was at least required to consider them. They both are pretty good arguments. Probably correct, but at least pretty obviously at play. And to me, the real fault here is with the pre-sentence report writer. Well, I mean, everyone missed it. I mean, myself included. And that was not a tactical decision knowing that this would obviously be appealed. But I want to address both the grouping calculations and at least try to clarify what our position is on this. Because the view is the carjacking is a distinct issue from the kidnapping. And the grouping guidelines say... Maybe two separate offenses. I get that. But the question is whether they should be grouped for sentencing. Right. And the question is whether, on a plain error review, the judge was required to. Because, I mean, that's what makes the error plain and obvious. And the commentary says, even if counts involve a single victim, the decision as to whether to group them may not always be clear-cut. And in the introduction to that section, it says, the rules in this part seek to provide incremental punishment for significant additional criminal conduct. And here we have a situation where it's like, well, if they're kidnapping, they might as well continue and carjack and commit other crimes. Again, this resulted in one additional point. So it's an incremental additional sanction. And so, again, on a plain error review, I don't think the judge was required to group these, especially required to do so without anyone objecting and then not being noted in the pre-sentence report. So we do make an argument under this 3D1.2C... Although I think you do agree that the guidelines, properly read, require grouping, you say on plain error review, the judge was not required to group them? Why is that? Because it's an obscure point? No, because it's an incremental additional harm that they... No, but why, when it's the right thing to do, the correct thing to do legally, that you say on plain error review, the judge was not required to do that? Why not? No, no. Our position is not that it was... That's what you just said. I'm sorry. Let me clarify then. Our position would be, even on remand, that these would not group. And, I mean, for the reasons that we've stated in our brief, there's an incremental additional harm that should have an incremental additional deterrent factor. Again, the kidnapping... You're not arguing, though, that, in fact, it was correct to do this? Or you are arguing that? I'm arguing that it's correct not to group the carjacking and kidnapping counts in this circumstance. But one of the examples is, if the defendant is convicted of kidnapping and assaulting the victim during the course of the kidnapping, the counts are to be grouped together. I understand this wasn't an assault, but it was a carjacking, but it was no more or less connected to the kidnapping. Right. So, I mean, here, the victims were kidnapped and assaulted. Those are both crimes against kind of the physical person, where the carjacking is also a theft or deprivation of property. But they're different crimes against the physical person. You can kidnap somebody and not assault them. I think the guidelines view them as... You want to deter people when they're kidnapping from assaulting the person, but, nonetheless, they're the same criminal transaction, and they're grouped. Yeah. What's interesting is, under that last subsection, D, that, for some reason, carjacking and kidnapping are specifically excluded from grouping. I understand that doesn't control the first three subsections, but it provided some insight into the different views they have of that crime. On the issue of plain error as distinct from just error, you obviously have that in your favor, that this is plain error review. It seems to me, though, that your argument is that this isn't plain error because you can make an argument, even if it's a rather bad argument. Therefore, it's not plain error. I mean, I guess I don't think it's a bad argument, but the Court may disagree. So, I mean, but in this instance, again, I don't think it's so clearly obvious that these would have to group under the facts of this case, not under the facts of a different case, but under the facts of this case. I think the more, another, an interesting issue is this firearm enhancement, though. And it's clear that was an error. But what should give the Court pause here is the fact that the 924C charge actually did not affect the sentence at all. He was given a life sentence on counts 1 through 4, and then a sentence of 10 years on the 924C. So it didn't actually, there's no double counting. Well, but that's only true if your first point is right. If your first point is wrong, and so that the life sentence would be reconsidered, then the second one as to the firearms would clearly go back as well. Right. I mean, if this Court finds plain error on the first point, then... Right. Assume for the moment that you lose on the grouping. Now what argument do you have? If I lose on the grouping, then it's plain error, and I think it's remanded. But I'd still like to address the firearm enhancement. If this Court does see that it's not a plain error to sua sponte with just the PSR and the sentencing memos, not to have grouped these together under the guidelines. But again, the firearm enhancement, again, is error, and it is... So, but under the fourth factor of the plain error analysis, as the Supreme Court found in Rosales-Morales, countervailing factors may satisfy the Court of Appeals that fairness, integrity, the public reputation of the proceeding would be preserved absent a correction. Again, here the 924C count actually had no effect on the sentencing. So the fact that... We're back to firearm enhancement, and you're no longer, and you're assuming that you win on the grouping? Is that where we are with this argument? I'm trying to... No, I didn't know if... I'm trying to follow where you are. If the Court has more questions on the carjacking and grouping... Okay, you're back on grouping. Okay, I'm sorry. Yeah. Well, I mean, both of these are grouping. There's the carjacking and kidnapping should have grouped argument, and there's the firearm, I guess, enhancement shouldn't have applied. I guess it's different than grouping. But the argument that you make in your briefs, which is that there was actually another weapon, that can't be done without going back. I think that's correct, Your Honor. I mean, I think it's well-supported, but I understand that... You can argue it when you get back, but... If we get back. Does this Court have any questions on what would be the findings that were made, which is regarding the leadership enhancement role, or I'm sorry, the organizer role, or the obstruction? No. Okay. I mean, I'll just cover this. You know, obviously, I think if the Court remands on one of the plain error, then these questions don't need to be necessarily reached. But to the extent that they do, the organizer enhancement was not illogical, implausible, or without support or inferences that may be drawn from the record. I understand there's countervailing arguments, and some of them are valid arguments, but in the end, the Court found that he did find that he was the planner and organizer, he said at the very least. Also, regarding the obstruction enhancement, I think it was well-supported also. Again, it wasn't illogical, implausible in the record. This was a note. It was obviously intended to be somehow passed to a third party on those issues. So, if the Court doesn't have any further questions... Okay. Thank you. Just a couple points. In response to Judge Berzon's question about it could go back for finding about whether the pole was actually a dangerous weapon, I'd ask the Court to be very careful in writing the opinion because that factual question only becomes relevant if, as a matter of law, you can use an alternative weapon. So, we'd want to make sure the Court... But he'll have your argument, he'll have his argument. I understand. That legal question would have to be also open. I did want to... I do think there's a really serious issue on the role reduction here and if the Court's not going to leave that open on remand and decide it, I'd certainly like it to look at deciding it in our favor. Please make that argument because I'm inclined, as I sit here, to rule against you on that point. All right. So, make your argument. Let me do that, Your Honor. First of all, there's two layers in the argument. One is the Pimentel-Lopez's case requirement of reliability when you're relying on a co-defendant statement. Here, you have no corroboration at all. The only corroboration the government points to is corroboration about things other than Mr. Sharber's organization role, things like he was a drug dealer and stuff. If you look for corroboration of the co-defendant statement suggesting that Mr. Sharber was the sort of mastermind of this or whatever, you don't have any corroboration. The other co-defendant, Elder, actually says it was Silva who came up and got him, not Sharber. Who came and did what? What happens is... There's two co-defendants, Mr. Silva and Mr. Elder. Mr. Silva's the one who makes the statement that the government uses to try to claim Mr. Sharber was the organizer. Mr. Silva went up and got Elder. No contact with Mr. Sharber that Mr. Elder mentions. Then the victims describe what happens with the stomping and the beating with a pole. It was Elder and Silva. Nothing about Mr. Sharber. So the victims' statements all point to nothing that suggests Mr. Sharber was controlling Mr. Elder and Mr. Silva. The victims also indicate that it was their idea to go back to the house or the apartment. It wasn't Mr. Sharber, quote, luring them, unquote. It was their idea to go back. So the problem you have under Pimintel-Lopez is there's simply no corroboration of this statement that the government claims is pointing at Mr. Sharber as an organizer. And second, even if you assume that the statement by Mr. Silva is true, take it for what it says, he never says Mr. Sharber told him what to do or organized him or gave him direction or instructions. The picture that's painted here, frankly, is there's two types of punishment or two sets of punishment being doled out. Mr. Silva and Mr. Elder beat the victims and they do their thing and then they go out and search the victim's car and recover some of Mr. Silva's property from the wallet that they find in the car. That's what they do. No indication that Mr. Sharber is telling them to do that or controlling how they do that or what they do. Then when they're done, Mr. Sharber takes them and doles out his punishment, which is conceitedly far worse. I mean, he takes them up to Hatcher Pass and shoots them, but Mr. Sharber is going to get a lot more time no matter what. I mean, under the absolute best view of the guidelines that I advance, the low end is 24 years and that's if we went on both roll and obstruction. Mr. Sharber is going to serve lots and lots and lots of time here. The question is whether it's going to be a life sentence or whether it's going to be something like 24 or 30 or 40 years. But if you look at the Pimentel-Lopez case and look really carefully at the facts here, Your Honor, there isn't that corroboration. And even if you take Mr. Silva's statement at face value, he never says. Remember under the Holden case, you have to organize participants, not activities or property. There's no indication here that Mr. Sharber, even from Mr. Silva, that Mr. Sharber was telling him what to do or controlling him or directing him. He had his own agenda. It was his wallet that was stolen and he himself on his own wanted to get even with these victims and then search their car and get the property back. So I just don't think even under a clear error and preponderance of the evidence standard that it flies here under Pimentel-Lopez or the Holden case, which is the substantive ruled case here. Okay. I'll submit it unless the Court has other questions. I think this is my fault. I asked you to sit down earlier and you'd not made that argument. The government's not had a chance to respond to that argument. I'd ask the government now to respond. That's fair, Your Honor. I induced that problem. If I could have one minute to respond to that. So on that point on the leadership, this is an organizer enhancement. And the Doe case, which we cite, I think has relevant facts that are analogous here. Here, some of the arguments that they make, the Pence argument that because Silva had pressured him that he had to do something actually supports the fact that Sharper actually organized this whole thing. He's the only one that can organize everyone over at his house. He's the one that has the weapons. He's the one who has the weapons when the police find him. He's the one who ends up carrying out these prospects. And when we show that initially in their opening brief, they say, well, the statements by Silva are uncorroborated. We go through the facts that we can corroborate within the brief, and they show that it was Sharper who wanted to get even. It was Sharper who wanted to protect his business. It was Sharper who wanted to send a message. That can't be the corroboration. So what's the corroboration? No, the corroboration is, I mean, it shows he was a drug dealer. That was protecting his business. It's corroborated that he was a drug dealer through all of these other accounts and the fact that he's found with the methamphetamine. It's corroborated that he's the one who brings these victims over. There's no other way. Silva doesn't have contact with him. Elder doesn't have contact with him. It's only Sharper that can organize and get everyone there at the same place in his apartment. Mr. Gunn, the victims went of their own accord. I'm sorry, what was that? According to Mr. Gunn, the victims went of their own accord. Whoa. Sorry. Correct. Sharper brought them over. Right, well, I mean, this is a buyer-seller relationship between people who are using drugs and people who are selling drugs. He knows they're going to be coming over, and he can set that up. I mean, it wasn't like the victims just snuck over there. I mean, this was a setup. They had their own reasons for wanting to go over there and find this ring. But again, it's not unsupported in the record to where it's clearly erroneous that the judge found this, and the same countervailing arguments were made essentially down below, and the court disagreed. Do you have a minute? Yeah. Thank you, Your Honor. To be very specific, it's pre-sentence report paragraph 16 where the victim says they made a plan to get back into Sharper's apartment. So that's where the record shows that he went back. The problem is I think what we have here with Mr. Sharper, quote, organizing, unquote, is he's organizing the location. He's organizing the victims perhaps, except the victims really wanted to come over on their own anyway. He provides the place, and he sets it and lets Silva, I guess, probably know that the victims are going to be over. But that's not enough under Holden. Under Holden, you have to organize the participants, and you have to have the ability and wherewithal to influence the participants and sort of control what the other participants do, and that there's no indication at all of here. On corroboration, look at the things. What the government corroborates is that Mr. Sharper has guns, that Mr. Sharper is a drug dealer, things like that, but there's a case called Huckins that I cite in the reply brief where they said a bank robber co-conspirator's statement about guns being possessed during the bank robbery wasn't enough. Well, in that case there was corroboration that the defendant had been involved in the bank robbery, but what was missing was corroboration of the things that created the enhancement, corroboration in that case of the gun. Here you need corroboration of the claim that Mr. Sharper was somehow controlling the other participants. If Silva can even be read as saying that, and I'm not sure he actually ever, he never actually says, Sharper told me what to do, or Sharper gave me instructions, or Sharper gave me directions. All he says is Sharper wanted to make it right. Got it. I'll stop here. Thank both sides for their helpful arguments. U.S. v. Sharper submitted.
judges: Tashima, W. Fletcher, Berzon